**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN PRESTON, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No: 10 C 0136 |
| | ) |
| CHICAGO POLICE OFFICER | ) Judge Rebecca R. Pallmeyer |
| DANIEL WARZYNSKI | ) |
| and THE CITY OF CHICAGO, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM ORDER**

John Preston ("Plaintiff") alleged that Chicago Police Officer Daniel Warzynski (Defendant") used excessive force when he arrested Preston outside a nightclub in the early morning on December 25, 2009. Defendant denied the claim, and a jury found in his favor. Plaintiff now seeks a new trial, challenging the composition of the jury. Specifically, Plaintiff contends he was denied due process because juror Bryan Diemer, an attorney who served as the foreperson, failed to disclose during voir dire that he had represented police officers in litigation more than ten years earlier. Plaintiff also argues that he suffered prejudice resulting from the court's resolution of several objections related to in-court identifications of Defendant. For the reasons explained here, the court concludes the circumstances do not constitute grounds for a new trial pursuant to FED. R. CIV. P. 59(a). The motion is therefore denied.

**FACTUAL BACKGROUND**

The four-day jury trial commenced on January 10, 2012. During *voir dire*, as Plaintiff admits, Diemer candidly answered the court's questions and provided the requested information on his jury questionnaire. Diemer stated that his wife once worked for the Fraternal Order of Police ("FOP") and that he has a brother-in-law who is a police officer. (Jury Questionnaire, Ex. 1 to Pl.'s Mot. for a New Trial [176], at 1.) Diemer also disclosed that his wife was fired from her position with the FOP while she was pregnant and that she had filed a pregnancy discrimination suit against her

former employer, which resulted in a settlement. (Jury Questionnaire at 2.) Further, Diemer provided truthful responses regarding his employment as an attorney. He admitted working for the International Union of Operating Engineers, Local 150, for the last ten years, and he also disclosed his previous work as an associate attorney for the law firm of Baum Sigman. (Jury Questionnaire at 1.)

Diemer underwent further questioning in open court, and again, he provided truthful answers. He stated that both he and his wife litigate cases regularly and that he had previously appeared before Judge Pallmeyer. (Voir Dire Tr., Ex. 2 to Pl.'s Mot. for a New Trial, 2:4-3:1.) He did not identify specific cases or particular parties he had represented in the past, nor was he was he asked to do so. The court did ask Diemer whether anything about his relationship with his brother-in-law or his wife's lawsuit against the FOP would interfere with his ability to be fair in a lawsuit against the police, to which he responded "no." (Voir Dire Tr. 4:3-19.) After the trial ended, Plaintiff's counsel discovered that more than ten years ago Diemer twice represented police officers in claims against the city of Chicago in federal court.[1] (Pl.'s Mot for a New Trial at 2.)

During the three-day trial, counsel for both parties made numerous objections, some of which form an alternative basis for Plaintiff's motion for a new trial. First, when witness Jasmine Smith, a friend of Plaintiff's, identified Defendant as the officer that threw Plaintiff to the ground, the court initially upheld Defendant's objection to the questioning on the basis that the witness was unable to identify Defendant at her deposition. (Trial Tr. I, Ex. 3 to Pl.'s Mot. for a New Trial, 15:7-16:9.) Plaintiff's counsel requested a sidebar, during which the court learned that, at her deposition, neither Plaintiff's nor Defendant's counsel asked the witness to identify Defendant from a photo array. (Trial Tr. I 16:10-17:7.) The court, therefore, overruled the objection and allowed

---

[1] In his motion for a new trial, Plaintiff does not explain how he learned that Diemer represented Chicago police officers on two separate occasions, but Defendant does not dispute this.

2

Plaintiff's counsel to continue with his questioning. (Trial Tr. I 17:7.) Jasmine Smith again identified Defendant.

Jasmine's sister, Monique Smith, also testified at trial, and she too identified Defendant as the officer that threw Plaintiff to the ground. (Trial Tr. II, Ex. 4 to Pl.'s Mot. for a New Trial, 14:16-25.) After she did so, Plaintiff's counsel asked that the court allow the record to reflect an in-court identification. (Trial Tr. II 15:19-20.) The court responded, "The jurors have observed it," and then Plaintiff's counsel ended his examination. (Trial Tr. II 15:19-23.)

During closing arguments, Plaintiff's counsel twice objected to defense counsel's characterization of Jasmine and Monique Smith's testimony. Plaintiff's counsel first objected when Defendant's counsel stated that the Smith sisters' identification of Defendant "was the first time anyone had pointed out [Defendant] as the person who did this in over two years." (Trial Tr. III, Ex. 5 to Pl.'s Mot. for a New Trial, 10:24-11:5.) The court then reminded the jury that, "if anything a lawyer says is inconsistent with the record as you heard it . . . it's your memory of the record that counts." (Trial Tr. III 11:6-9.) Shortly thereafter, Defendant's counsel returned to the Smith sisters' testimony and suggested it was "a coincidence that the only two people who never viewed a photo array were the only two people that were able to be brought inside the court and point out [Defendant]." (Trial Tr. III 13:3-6.) Plaintiff's counsel objected on the basis that Defendant's counsel had once more misstated the evidence. (Trial Tr. III 13:7.) Again, the court admonished the jurors that "[i]t's [their] memory of the evidence that counts." (Trial Tr. III 13:8-11.) After closing arguments ended, the jury deliberated and returned a verdict for Defendant.

## **DISCUSSION**

Plaintiff argues that he is entitled to a new trial based on Diemer's allegedly dishonest answers during *voir dire* and on the court's treatment of several objections raised during examination of the Smith sisters and closing arguments. The Seventh Circuit has repeatedly reminded civil litigants that they "are entitled to a fair trial, not a perfect one." *Griffin v. Foley*,

3

542 F.3d 209, 224 (7th Cir. 2008) (internal quotation marks and citation omitted). Thus, the court will grant a new trial only where "the error has a substantial and injurious effect or influence on the determination of a jury, and the result is inconsistent with substantial justice." *Whitehead v. Bond*, 680 F.3d 919, 930 (7th Cir. 2012) (internal quotation marks and citation omitted). In other words, the verdict rendered must be one that results in "a miscarriage of justice" or that "cries out to be overturned or shocks our conscience." *Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (internal quotation marks and citations omitted). For the reasons explained below, Plaintiff has not met that high standard.

I. **Juror's Allegedly Dishonest Answers**

In order for a party to obtain a new trial based on a juror's alleged failure to provide an honest answer during *voir dire*, a party must demonstrate that (1) "[the juror] failed to answer honestly a material question on *voir dire*," and (2) "a correct response would have provided a valid basis for a challenge for cause." *United States v. Benabe*, 654 F.3d 753, 780-81 (7th Cir. 2011) (citing *McDonough Power Equip., Inc. v. Greenwood,* 464 U.S. 548, 556 (1984)). A prospective juror's motivation for concealing information may vary, but "only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial." *McDonough*, 464 U.S. at 556. Invalidating a jury verdict "'because of a juror's mistaken, though honest, response to a question is to insist on something closer to perfection than our judicial system can be expected to give.'" *Arreola v. Choudry*, 533 F.3d 601, 608 (7th Cir. 2008) (quoting *McDonough*, 464 U.S. at 555).

Plaintiff here has not satisfied either of the two showings necessary under the *McDonough* test. That test requires, first, that Plaintiff establish that Diemer did not honestly answer a material question during *voir dire*. Notably, Plaintiff here does not suggest that Diemer gave untruthful answers to any specific question on the jury questionnaire or asked by the court. Plaintiff instead bases his allegations of Diemer's purported dishonesty on the fact that Diemer "never disclosed that he himself [had] represented Chicago police officers" and that, when asked if he litigated regularly,

4

Diemer answered in the affirmative "without further elaboration." (Pl.'s Mot for a New Trial at 3.) Plaintiff thus equates Diemer's failure to volunteer information regarding his ten year-old representation of two police officers with intentional deception.

The first prong of the *McDonough* test, however, is not met where a juror merely fails to volunteer additional information, particularly where, as here, counsel had the opportunity to question the juror further but declined to do so. *See, e.g.*, *Benabe*, 654 F.3d at 781, *cert. denied*, 132 S. Ct. 1612 (Feb. 21, 2012). In *Benabe*, a potential juror was asked whether she had any friends or family members who were gang members, and she answered honestly that her son was a gang member roughly ten years ago; she did not, however, volunteer that her son was a member of Insane Deuces—the same gang to which the defendants belonged. *Id.* at 779, 781. When the defendants moved for a new trial, the court noted that the juror honestly answered the questions posed to her, and that no one, including defense counsel, had asked her whether her son belonged to Insane Deuces. *Id.* at 781. By failing to take advantage of the opportunity to question the juror further, the defendants "lost their ability to seek a new trial" on that basis. *Id.* (citing *McDonough*, 464 U.S. at 550 n.2). Similarly, in this case, Plaintiff's counsel could have asked Diemer additional questions about his litigation experience and his relationships with police officers—including whether Diemer had ever represented a police officer—but he did not do so. Plaintiff cannot now challenge the composition of the jury when he chose not to interrogate further a potential juror who admitted having significant relations with police officers and police organizations.

Even if Plaintiff could establish that Diemer failed to honestly answer a material question, he cannot show that a correct response—one that disclosed Diemer's two prior representations of Chicago police officers—would have provided a valid basis for a challenge for cause. A juror may be excused for cause where the juror has demonstrated a bias that may impair his or her ability to decide the case solely on the evidence in the record. *McDonough*, 464 U.S. at 554. Plaintiff has not proffered any evidence that Diemer's ability to faithfully fulfill his juror duties was compromised

by his prior representation of police officers. Indeed, as Plaintiff did not mount a for-cause challenge to the seating of Diemer because his brother-in-law is a police officer and his wife formerly worked for the FOP, it is hard to understand how Diemer's ten year-old representation of officers would have prompted such a challenge. The court also notes that it is not clear how Diemer's representations of police officers on two occasions might have affected his partiality: in both those cases, Diemer sued the City of Chicago, which was also a named Defendant in this case.

Furthermore, even where a juror may have demonstrated bias, the juror may nevertheless be seated properly where the juror gives credible, unequivocal assurances that he or she can set aside prior beliefs or biases for the purposes of deciding the case. *United States v. Allen*, 605 F.3d 461, 464-65 (7th Cir. 2010) (citations omitted) (finding the trial court properly seated a juror over defendant's for-cause challenge where the juror stated she could give the defendant, accused of child pornography crimes, "the benefit of the doubt," even though her six-year-old daughter was a victim of attempted kidnaping years ago). Here, when the court asked Diemer whether anything about his relationship with his brother-in-law or his wife's prior employment with the FOP would interfere with his ability to be fair in this case, he unequivocally replied, "No." (Voir Dire Tr. at 4:3-19.) Thus, Plaintiff has failed to satisfy either prong of the *McDonough* test.

**II.     Court's Treatment of Objections**

Plaintiff also contends that he was unfairly prejudiced by the court's response to objections related to in-court identifications of Defendant. First, Plaintiff contends that the court improperly gave its imprimatur to Defendant's arguments that neither Jasmine nor Monique Smith made a proper in-court identification of Defendant. Specifically, Plaintiff notes that the court initially sustained objection to Jasmine Smith's identification, but then after a sidebar, reversed course, overruled the objections, and allowed the questioning to continue. These circumstances, Plaintiff now contends, cast undue doubt on the validity of the identification. (Pl.'s Mot for a New Trial at 6.)

6

The court further conveyed this improper message, argues Plaintiff, when counsel asked for the record to reflect Monique Smith's in-court identification, and, instead of simply granting the request, the court replied, "The jurors have observed it." Second, Plaintiff claims further prejudice resulting from the court's failure to formally sustain his counsel's objections to Defendant's counsel's statement, during closing arguments, that the trial was the first time Jasmine or Monique Smith ever identified Defendant.

Plaintiff's arguments are unpersuasive. First, the court does not agree that it cast any doubt on Jasmine Smith's identification of Defendant: it ultimately overruled Defendant's objections to her testimony and allowed the jury to hear Jasmine Smith identify Defendant as the officer who allegedly threw Plaintiff to the ground. At the outset of the trial, the court directed the jury, when an objection is overruled, to consider the question and answer as they do all other evidence in the trial.

The court also appropriately responded to Plaintiff's objections during closing arguments by reminding the jurors that the attorneys' statements are argument, not evidence, and that the jurors should base their decision on their own recollections of the evidence. That instruction was satisfactory. Indeed, a more specific ruling on such an objection arguably puts the court's own "thumb" on the scales of analysis. In any event, any imperfections in the court's response to these objections cannot be said to have caused Plaintiff to suffer "substantial prejudice." *See, e.g., Willis v. Lepine*, 687 F.3d 826, 834 ("A new trial is warranted only if allegedly improper closing remarks depart from the evidence presented at trial and result in substantial prejudice to the opposing party.") (internal quotation marks and citation omitted). The Seventh Circuit has noted that "improper comments during closing argument rarely rise to the level of reversible error," *id*. (internal quotation marks and citation omitted), and Plaintiff's case is not one of the rare few.

Moreover, as Defendant pointed out, there were other plausible reasons why the jury may have ultimately discredited the Smith sisters' in-court identifications of Defendant. The Smith

sisters are close friends of Plaintiff, who may have had an interest in his prevailing in this lawsuit. Defense counsel impeached both the witnesses' credibility on cross-examination. For example, the jury heard that at her deposition, Jasmine Smith described the offending officer as having gray hair and a beard, but there was no evidence the Defendant ever possessed those characteristics. The jury also heard that at during her deposition, Monique Smith was unable to describe the physical appearance of the officer who threw Plaintiff to the ground. Plaintiff's own testimony was challenged on cross-examination, as well. In short, the verdict for Defendant was not "a miscarriage of justice, nor does it "cr[y] out to be overturned." The court is satisfied that Plaintiff received a fair trial, and, accordingly, it denies Plaintiff's motion for a new trial.

## **CONCLUSION**

For the reasons explained herein, the motion for a new trial [176] is denied.

ENTER:

Dated: September 28, 2012

_____
REBECCA R. PALLMEYER
United States District Judge

8